## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

SKILLSTORM          COMMERCIAL
SERVICES, LLC, a Delaware limited
liability company,

     Plaintiff,                                Case Number:

v.

SMOOTHSTACK, INC. a Virginia
corporation, and IMAD ANABTAWI,
an individual,

     Defendants.

_____/

## <u>COMPLAINT</u>

Plaintiff, SKILLSTORM COMMERCIAL SERVICES, LLC, a Delaware limited liability company ("SkillStorm"), files this complaint against Defendants, SMOOTHSTACK, INC., a Virginia corporation ("Smoothstack") and IMAD ANABTAWI, an individual ("Anabtawi"), and alleges as follows:

1.    This action arises from the actions of Smoothstack soliciting and obtaining from a former executive of SkillStorm, Anabtawi, confidential and proprietary business information and trade secrets concerning, for example, SkillStorm's pricing, minimum order size, terms for conversion from contract consultant to client full-time employee, market segmentation, SkillStorm value drivers to clients in all market segments, buyer personas in all market segments, SkillStorm differentiators, sales language for each market

segmentation, potential deals in SkillStorm's sales pipeline, and the technology platforms SkillStorm was targeting in its sales strategy. This was all done in violation of confidentiality agreements to which Anabtawi was a party. Smoothstack recorded a video of the interview where Anabtawi provided this information. Smoothstack then improperly used this information by having its sales department employees watch the video and use the information to guide their techniques and strategies, and to target existing clients of SkillStorm.

### The Parties, Jurisdiction, and Venue

2.     SkillStorm is a limited liability company formed under the laws of the State of Delaware, with its principal place of business at 10151 Deerwood Park Blvd., Building 100, Suite 425, Jacksonville, FL 32256.

3.     Defendant Smoothstack is a corporation organized under the laws of Virginia, with its principal place of business at 8200 Greensboro Drive, #900, McLean, Virginia.

4.     Anabtawi is an individual who is domiciled and resides in Dallas County, Texas.

5.     Both SkillStorm and Smoothstack engage in interstate commerce, having employees and providing services to clients throughout the country, including in the state of Florida.

2

6.      The Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331 because Plaintiff asserts claims that arise under federal law, specifically, the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836. This Court has supplemental jurisdiction over the remaining state law claims pursuant to 28 U.S.C. § 1367.

7.      The Court has personal jurisdiction over Defendants because they operate, conduct, engage in, and carry on a business or business venture in the state of Florida, *see* Fla. Stat. § 48.193(1)(a)(1), and they both committed tortious acts within the state of Florida, *id.* § 48.193(1)(a)(2).

8.      SkillStorm has its headquarters in Florida and maintains much of, if not all, the misappropriated and/or improperly disclosed information there.

9.      Anabtawi while employed by SkillStorm was in regular contact with its Florida headquarters, travelled to SkillStorm's Florida office on multiple occasions during his employment for training and company meetings with other executives and employees, drew his paychecks from Florida, and obtained the information he disclosed from contact with SkillStorm and its agents in Florida.

10.     Defendant Anabtawi also agreed that his contracts and other disputes shall be governed by and interpreted in accordance with Florida law.

55330599 v1

11.     Smoothstack, who provides services on a nationwide basis, on information and belief, provides services in Florida for certain of its clients.

12.     Smoothstack employs executives and employees who are based out of and work in Florida, including at the time the misappropriation at issue took place.

13.     In addition, based on Florida's Division of Corporations website, Smoothstack submitted an out of state registration filing in October 2018.

14.     Smoothstack expects that it will be brought into court in this district. For example, Smoothstack's website's terms and conditions, located at https://smoothstack.com/terms-conditions/, provides that "Any legal suit, action, or proceeding arising out of, or related to, these Terms of Use or the Website shall be instituted exclusively in the federal courts of the United States or the courts of the State of Florida, in each case located in the City of Jacksonville and County of Duval, although we retain the right to bring any suit, action, or proceeding against you for breach of these Terms of Use in your country of residence or any other relevant country. You waive any and all objections to the exercise of jurisdiction over you by such courts and to venue in such courts." The website terms and conditions also contain a choice of law provision stating that Florida law shall control disputes relating to or arising out of its website and the terms of use.

4

15.    Further, the harm and damages from the actions of Anabtawi and Smoothstack set forth herein have been experienced and suffered by SkillStorm in the state of Florida, and more specifically, in this district.

16.    Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to these claims occurred here. This includes, but is not limited to the fact that Anabtawi entered into the subject contracts that are at the center of this action here, the misappropriated information is maintained here, both Defendants do business relating to the relevant events or omissions here, and the harm from the actions set forth herein was suffered by SkillStorm in this district.

17.    All conditions precedent to the filing of this action have been performed, waived or excused by law.

## GENERAL ALLEGATIONS

### A.    SkillStorm and Anabtawi

18.    SkillStorm trains and provides world-class tech talent to clients across the United States. SkillStorm recruits military veterans and recent college graduates who have aptitude in IT fields, but who may not have previous IT training relevant to what employers need. SkillStorm then hires the individuals it recruits and provides them immersive training in IT fields. At the end of the immersive training, SkillStorm places the newly-trained and

5

certified IT consultants with businesses (i.e., SkillStorm customers) in need of their skills. SkillStorm builds customer-ready tech workforces for top Fortune 100 companies and government system integrators within the U.S.

19.    Anabtawi, was hired by SkillStorm on or about March 27, 2023 as a sales executive at SkillStorm. Anabtawi held the title of Senior Vice President of Software Partnerships at SkillStorm until his separation from employment with SkillStorm on or about June 24, 2024.

20.    In connection with, and as a condition of, his employment, Anabtawi executed and delivered to SkillStorm that certain Confidential Information, Non-Solicitation, and Non-Competition Agreement dated June 13, 2023 (the "Confidentiality Agreement").

21.    In connection with the end of the employment relationship between Anabtawi and SkillStorm, they entered into that certain Transition Agreement, Waiver and Release, dated April 26, 2024 (the "Transition Agreement," and together with the "Confidentiality Agreement," the "Agreements").

22.    As Senior Vice President of Software Partnerships, Anabtawi was responsible for driving sales goals through software partners to enterprise clients including federal integrators supporting federal contracts, among other things. Anabtawi also collaborated with other employees of SkillStorm to

achieve sales goals by connecting account executives with high-level program managers in commercial organizations and federal integrators, among other things.

23.     As Senior Vice President of Software Partnerships, Anabtawi also had access to, and direct knowledge of, SkillStorm's confidential and proprietary business information. The Agreements, were designed to protect the legitimate business interests of SkillStorm, including, but not limited to, SkillStorm's trade secrets, valuable confidential business information that otherwise does not qualify as trade secrets, and its substantial relationships with specific prospective or existing customers and clients.

24.     Pursuant to the Agreements, Anabtawi agreed to keep confidential all information about SkillStorm's systems, equipment, suppliers, accounts, customers, customer lists (including, but not limited to, customers of the Company on whom Employee calls or with whom Employee becomes acquainted during the term of his/her employment), pricing policies and characteristics, market plans, expiration dates of customer contracts, technical data, research, financial information, software, inventions, technology, information about key employees, personnel data, and any other confidential or proprietary information relating to SkillStorm, its business and its methods of doing

7

business (collectively, and as more specifically defined in the Agreements, the "Confidential Information").[1]

25.    Under the Section 1.b. of the Confidentiality Agreement, Anabtawi also agreed and was prohibited from, the both during and upon the termination of his employment with SkillStorm, whether voluntary or involuntary, divulging, disclosing or making accessible to another person or entity SkillStorm's Confidential Information. Anabtawi also agreed, under Section 5 of the Confidentiality Agreement, upon termination of such employment, to return all property and work product of SkillStorm, including, but not limited to, "all company property, information (whether in electronic or "hard" format), customer lists, address lists, keys, credit cards, cell phones, devices, records, data, notes, reports, proposals, lists, correspondence, specifications, materials, and other documents, and reproductions of any of these items, and any other items belonging" to SkillStorm.

26.    Similarly, in connection with the Transition Agreement, in Section 11 thereof, Anabtawi acknowledged and agreed *that he had not previously* and would not in the future use or disclose Confidential Information to a third party,

---

[1] This definition of "Confidential Information" is non-exhaustive. Complete definitions of all Confidential Information covered by the Agreements are set forth in Section 1(a) of the Confidentiality Agreement and Section 11 of the Transition Agreement, respectively.

55330599 v1

and would return all documents, disks, CDs, DVDs, drives, storage devices or any other item or source containing Confidential Information upon execution of the Transition Agreement.

27.    Section 13 of the Transition Agreement expressly noted that the Confidentiality Agreement remained in effect, irrespective of the Transition Agreement.

28.    By signing the Agreements, as set forth in Section 1.a. of the Confidentiality Agreement, Anabtawi understood and acknowledged that the

> Confidential Information and trade secrets constitutes valuable, special and unique property of SkillStorm that it has developed and accumulated at great effort and expense, and that the disclosure of such information to other persons or entities, or the unauthorized use of such information, would result in irreparable harm to SkillStorm and its business.

29.    Anabtawi also acknowledged in Section 1.a. of the Confidentiality Agreement that he understood that SkillStorm's "customer database and other information identifying customers and clients are proprietary information that has been collected over a significant amount of time and at great effort and expense and that this information is among the most highly confidential proprietary information of SkillStorm and should only be used for the Company's benefit."

9

30.     Section 2.a.viii. Confidentiality Agreement also precluded, as "Prohibited Activity" "activity that may require or inevitably require disclosure of trade secrets, proprietary information, or Confidential Information."

31.     Anabtawi agreed in Section 2.j. of the Confidentiality Agreement that "in the event of any breach" by him of his nondisclosure obligation or any other protective covenant in the Confidentiality Agreement, SkillStorm could "apply to any court of competent jurisdiction for the entry of an immediate order for an injunction restraining Employees' breach of the covenants," but that SkillStorm's "right to an injunction shall not limit its right to any other remedies, including damages."

32.     Anabtawi also agreed in that same section of the Confidentiality Agreement "to pay the [SkillStorm]'s costs, including attorney's fees, for having to enforce any of the provisions" of the Confidentiality Agreement.

**B.    Anabtawi discloses trade secrets and confidential business information to Smoothstack and Smoothstack uses that information in its business.**

33.     Smoothstack is a staffing agency that recruits IT professionals at the beginning of their careers with promises to launch their careers with paid training and work assignments with Smoothstack's clients.

34.     Smoothstack is a competitor of SkillStorm.

35.     John Akkara ("Akkara") is a founder and the CEO of Smoothstack.

10

36.     In or about February 2024, Anabtawi, while he was still employed at SkillStorm, was virtually interviewed by Akkara via a remote video platform such as Zoom or Microsoft Teams. It is believed that this interview was for a potential position with Smoothstack.

37.     As part of the interview, Akkara solicited and Anabtawi provided Confidential Information or trade secrets of SkillStorm. This included confidential and proprietary information about SkillStorm's client list and information about those clients (including, on information and belief, pricing information), how SkillStorm organized its client accounts, SkillStorm's sales strategy both with potential customers and existing technology platform partners, potential deals in SkillStorm's sales pipeline, and the technology platforms SkillStorm was targeting in its sales strategy.

38.     Akkara recorded that interview and caused Smoothstack to make a video from the recording (the "Video").

39.     Members of Smoothstack's sales team are and have been instructed by their supervisors to watch the Video, and determine how to adopt or use SkillStorm's Confidential Information and trade secrets as part of Smoothstack's business and sales strategies.

40.    As of at least August 23, 2024, Smoothstack was still using the Video with its sales team members, and SkillStorm believes that it is continuing to do so.

41.    On information and belief, Akkara intended to solicit this Confidential Information from Anabtawi. Further, given Smoothstack's role in the highly competitive technology consulting market, where confidentiality agreements such as those at issue here are routinely used to protect proprietary business information and trade secrets, Smoothstack was causing or encouraging Anabtawi to breach such agreements with and obligations to SkillStorm by asking for the information it did on the February 2024 videoconference.[2]

42.    As a direct and proximate result of the above-alleged acts and conduct of Anabtawi, SkillStorm has been damaged in an as-yet-undetermined amount, exclusive of interests and costs, consisting of lost profits, injured goodwill, and other compensatory damages.

43.    SkillStorm has spent hundreds of thousands of dollars developing the Confidential Information that Anabtawi and Smoothstack have misappropriated.

---

[2] In fact, Smoothstack uses confidentiality agreements in connection with its own business to protect its own confidential and proprietary business information.

55330599 v1

44.     Smoothstack—a direct competitor of SkillStorm—will benefit significantly from having any of SkillStorm's Confidential Information available to it because it will save Smoothstack the time and expense of having to develop such information for itself. Smoothstack's use of SkillStorm's Confidential Information therefore puts it at a competitive advantage in the marketplace, and, conversely, puts SkillStorm at a competitive disadvantage.

45.     For example, on information and belief, Smoothstack and its agents have used SkillStorm's Confidential Information and trade secrets to contact SkillStorm's current and prospective clients and to attempt to undercut SkillStorm's pricing with certain of those clients or prospective clients.

46.     Because of the wrongful acts and conduct of Anabtawi and Smoothstack as alleged here, SkillStorm had to retain the services of its undersigned counsel to bring this action, thus obligating itself to pay reasonable attorneys' fees for those services.

## COUNT I

### (Violations of the Defend Trade Secrets Act, 18 U.S.C. § 1836 - Anabtawi and Smoothstack)

47.     SkillStorm realleges paragraphs 1 through 46 of this Complaint as if set forth fully herein.

48.     SkillStorm's pricing, minimum order size, terms for conversion from contract consultant to client full-time employee, market segmentation,

13

SkillStorm value drivers to clients in all market segments, buyer personas in all market segments, SkillStorm differentiators, and sales language for each market segmentation (the "Sales Trade Secrets") are trade secrets as defined in 18 U.S.C. § 1839(3).

49.    The Sales Trade Secrets:

(a)    give SkillStorm a business advantage over those who do not know or use them;

(b)    are not known, are kept secret from those outside of SkillStorm's employ, or are developed by SkillStorm at great expense and effort over a substantial period of time;

(c)    cannot easily be duplicated by others;

(d)    are valued by SkillStorm for use in a business, are the subject of measures taken by SkillStorm to prevent them from becoming available to others than those to whom access has been granted by SkillStorm to fulfill their job duties while in SkillStorm's employ;

(e)    are protected further by the requirement that all employees execute a contract containing non-solicitation and confidentiality provisions, such as the Confidentiality Agreement executed by Anabtawi; and

14

(f)    are protected further by a practice and policy by SkillStorm of protecting its trade secrets and Confidential Information, including the Sales Trade Secrets.

50.    In violation of 18 U.S.C. § 1839(5)(B) Anabtawi has improperly disclosed the Sales Trade Secrets, even though they were acquired under circumstances giving rise to a duty to maintain their secrecy and limit their use.

51.    In violation of 18 U.S.C. § 1839(5)(A), Smoothstack has misappropriated the Sales Trade Secrets, by inducing Anabtawi to disclose the trade secrets during a recorded interview, in violation of Anabtawi's non-disclosure obligations under his Confidentiality Agreement in violation of 18 U.S.C. § 1839(6).

52.    In violation of 18 U.S.C. § 1839(5)(B), Smoothstack has misappropriated the Sales Trade Secrets, by further disclosing the trade secrets to other employees of Smoothstack, through, for example, the Video, following the acquisition of the trade secrets. Smoothstack took and retained those trade secrets and wrongfully uses them to train and assist Smoothstack's sales team, using, and likely still using, such trade secret information for the benefit of Smoothstack.

55330599 v1

53.    In violation of 18 U.S.C. § 1839(5)(B), Smoothstack has misappropriated the Sales Trade Secrets, by, on information and belief, using SkillStorm's trade secrets to contact and solicit SkillStorm's current and prospective clients and to attempt to undercut SkillStorm's pricing with certain of those clients or prospective clients.

54.    When Anabtawi disclosed and/or used the Sales Trade Secrets, he knew or had reason to know his knowledge of the trade secrets was acquired under circumstances giving rise to a duty to maintain the secrecy or limit the use of the trade secret.

55.    When Smoothstack acquired the Sales Trade Secrets from Anabtawi, it knew or had reason to know that the trade secrets were acquired by improper means—from Anabtawi's breach or inducement of Anabtawi's breach of a duty to maintain the trade secret's secrecy.

56.    Smoothstack used and further disclosed the Sales Trade Secrets as set forth herein, despite using improper means to acquire knowledge of the trade secrets—from Anabtawi's breach or inducement of Anabtawi's breach of a duty to maintain the trade secrets' secrecy.

57.    Smoothstack used and further disclosed the Sales Trade Secrets as set forth herein, despite deriving those trade secrets from Anabtawi, who was

a person who owed a duty to SkillStorm to maintain the secrecy of the trade secrets and limit their use.

58.    As a result of the foregoing, SkillStorm has suffered irreparable harm and will suffer additional irreparable harm from the loss and the benefits of secrecy of the Sales Trade Secrets, for which it has no adequate remedy at law.

59.    Anabtawi's and Smoothstack's actions are and were intentional, willful, wanton, or reckless, and calculated to harm SkillStorm in its business affairs.

60.    SkillStorm has a clear right to relief and there is a substantial likelihood of success on the merits.

61.    The public interest will be served by the granting of injunctive relief.

62.    SkillStorm is entitled to injunctive relief pursuant to 18 U.S.C. § 1836(b)(3)(A).

63.    As a direct and proximate result of Defendants' unlawful and improper actions, SkillStorm has suffered, and will continue to suffer, actual damages.

17

64.    SkillStorm is also entitled to damages for the actual loss caused by the misappropriation and any unjust enrichment caused by the misappropriation under 18 U.S.C. § 1836(b)(3)(B)(i).

65.    Because Smoothstack's misappropriation was willful and malicious, SkillStorm requests an award of exemplary damages pursuant to 18 U.S.C. § 1836(b)(3)(C) or otherwise.

66.    SkillStorm has retained the law firm of Burr & Forman LLP for the purpose of prosecuting its claims against Defendants, SkillStorm is obligated to pay the law firm of Burr & Forman LLP a reasonable fee for its services, and because Smoothstack's misappropriation was willful and malicious, SkillStorm requests an award of its attorney's fees pursuant to 18 U.S.C. § 1836(b)(3)(D) or otherwise.

## <u>COUNT II</u>

### (Violations of Florida Uniform Trade Secrets Act, Fla. Stat. §§ 688.001, *et seq.* – Anabtawi and Smoothstack)

67.    SkillStorm realleges paragraphs 1 through 46 of this Complaint as if set forth fully herein.

68.    The Sales Trade Secrets are trade secrets as defined in Chapter 688, Florida Statutes.

69.    The Sales Trade Secrets:

55330599 v1

(a)    give SkillStorm a business advantage over those who do not know or use them;

(b)    are not known, are kept secret from those outside of SkillStorm's employ, or are developed by SkillStorm at great expense and effort over a substantial period of time;

(c)    cannot easily be duplicated by others;

(d)    are valued by SkillStorm for use in a business, are the subject of measures taken by SkillStorm to prevent them from becoming available to others than those to whom access has been granted by SkillStorm for fulfilling their job duties while in SkillStorm's employ;

(e)    are protected further by the requirement that all employees execute a contract containing non-solicitation and confidentiality provisions, such as the Confidentiality Agreement executed by Anabtawi; and

(f)    are protected further by a practice and policy by SkillStorm of protecting its trade secrets and Confidential Information, including the Sales Trade Secrets.

70.    In violation of Fla. Stat. § 688.002(2)(b)(2) Anabtawi has improperly disclosed the Sales Trade Secrets, even though they were acquired

under circumstances giving rise to a duty to maintain their secrecy and limit their use.

71.    In violation of Fla. Stat. § 688.002(2)(b)1., Smoothstack has misappropriated the Sales Trade Secrets by inducing Anabtawi to disclose the trade secrets during a recorded interview, in violation of Anabtawi's non-disclosure obligations under his Confidentiality Agreement in violation of Fla. Stat. § 688.002(1).

72.    In violation of Fla. Stat. § 688.002(2)(b)(2), Smoothstack has misappropriated the Sales Trade Secrets, by further disclosing the trade secrets to other employees of Smoothstack, through, for example, the Video, following the acquisition of the trade secrets. Smoothstack took and retained those trade secrets and wrongfully uses them to train and assist Smoothstack's sales team, using, and likely still using, such trade secret information for the benefit of Smoothstack.

73.    In violation of Fla. Stat. § 688.002(2)(b)(2), Smoothstack has misappropriated the Sales Trade Secrets, by, on information and belief, using SkillStorm's trade secrets to contact and solicit SkillStorm's current and prospective clients and to attempt to undercut SkillStorm's pricing with certain of those clients or prospective clients.

74. When Anabtawi disclosed and/or used the Sales Trade Secrets, he knew or had reason to know his knowledge of the trade secrets was acquired under circumstances giving rise to a duty to maintain the secrecy or limit the use of the trade secret.

75. When Smoothstack acquired the Sales Trade Secrets from Anabtawi, it knew or had reason to know that the trade secret was acquired by improper means—from Anabtawi's breach or inducement of Anabtawi's breach of a duty to maintain the trade secret's secrecy.

76. Smoothstack used and further disclosed the Sales Trade Secrets as set forth herein, despite using improper means to acquire knowledge of the trade secrets—from Anabtawi's breach or inducement of Anabtawi's breach of a duty to maintain the trade secrets' secrecy.

77. Smoothstack used and further disclosed the Sales Trade Secrets as set forth herein, despite deriving those trade secrets from Anabtawi, who was a person who owed a duty to SkillStorm to maintain the secrecy of the trade secrets and limit their use.

78. As a result of the foregoing, SkillStorm has suffered irreparable harm and will suffer additional irreparable harm from the loss and the benefits of the Sales Trade Secrets, for which it has no adequate remedy at law.

21

79.     Anabtawi's and Smoothstack's actions are and were intentional, willful, wanton, or reckless, and calculated to harm SkillStorm in its business affairs.

80.     SkillStorm has a clear right to relief and there is a substantial likelihood of success on the merits.

81.     The public interest will be served by the granting of injunctive relief.

82.     SkillStorm is entitled to injunctive relief pursuant to Fla. Stat. § 688.003.

83.     SkillStorm is also entitled to damages pursuant to Fla. Stat. § 688.004, for the actual loss caused by the misappropriation and any unjust enrichment caused by the misappropriation.

84.     SkillStorm has retained the law firm of Burr & Forman LLP for the purpose of prosecuting its claims against Defendants, SkillStorm is obligated to pay the law firm of Burr & Forman LLP a reasonable fee for its services, and because Smoothstack's misappropriation was willful and malicious, SkillStorm requests an award of its attorney's fees pursuant to Fla. Stat. § 688.005.

55330599 v1

85.    Pursuant to Fla. Stat. § 768.72, SkillStorm reserves the right to amend this Complaint to seek punitive damages on an appropriate evidentiary showing.

## COUNT III

### (Breach of Contract – Confidentiality Agreement - Anabtawi)

86.    SkillStorm hereby realleges paragraphs 1-46 as if fully set forth here.

87.    Anabtawi signed and executed a Confidentiality Agreement in which he agreed in Sections 1.a. and 1.b. to hold any and all Confidential Information (as defined therein) belonging to SkillStorm in strict confidence and agreed to exercise a reasonable degree of care to prevent disclosure of said Confidential Information to others.

88.    Anabtawi signed and executed a Confidentiality Agreement in which he agreed in Section 1.b. that he would not disclose or divulge to others, either directly or indirectly, either during or after employment, any and all Confidential Information (as defined therein), belonging to SkillStorm unless first expressly authorized in writing to do so by SkillStorm.

89.    The restraints imposed by the provisions of the Confidentiality Agreement are justified by one or more legitimate business interests of SkillStorm as specified above.

23

90.    The restraints imposed by the provisions of the Confidentiality Agreement are reasonable and narrowly tailored to protect SkillStorm's legitimate business interests.

91.    The restraints imposed by the provisions of the Confidentiality Agreement align with applicable public policy.

92.    Anabtawi, in obtaining, using and disclosing SkillStorm's Confidential Information (as defined in the Confidentiality Agreement), to Smoothstack, a competitor of SkillStorm, has breached the Confidentiality Agreement.

93.    As a proximate result of Anabtawi's breach as described above, SkillStorm has suffered and will continue to suffer damages that cannot be reasonably determined at present.

94.    SkillStorm will be irreparably harmed if Anabtawi is permitted to continue using or disclosing SkillStorm's Confidential Information.

95.    SkillStorm has no adequate remedy at law and is, therefore, entitled to an injunction enjoining Anabtawi from further use or disclosure of SkillStorm's confidential information.

96.    In Section 1.a. of the Confidentiality Agreement, Anabtawi acknowledges the irreparable harm to SkillStorm resulting from his breach of the Confidentiality Agreement.

55330599 v1

97.    Anabtawi has agreed, through the Confidentiality Agreement, that in the event of a violation of the confidentiality and non-disclosure provisions therein, SkillStorm is entitled to seek to injunctive relief and damages.

98.    SkillStorm has a substantial likelihood of success on the merits of its claims against Anabtawi.

99.    The threatened injury to SkillStorm outweighs any possible harm to Anabtawi.

100.    In granting injunctive relief, this Court will not disserve the public interest.

## COUNT IV

## (Breach of Contract – Transition Agreement - Anabtawi)

101.    SkillStorm hereby realleges paragraphs 1-46 as if fully set forth here.

102.    Anabtawi signed and executed the Transition Agreement in which he acknowledged, in Section 11, that SkillStorm prohibits the disclosure of all Confidential Information (as defined therein) belonging to SkillStorm.

103.    Anabtawi signed and executed the Transition Agreement in which, in Section 11, *he warranted that he had not*, and agreed that he would not in the future disclose or divulge to others, either directly or indirectly, any and all

25

Confidential Information (as defined therein), belonging to SkillStorm unless compelled by law to do so.

104.    The restraints imposed by the confidentiality and non-disclosure provision of the Transition Agreement are justified by one or more legitimate business interests of SkillStorm as specified above.

105.    The restraints imposed by the confidentiality and non-disclosure provision of the Transition Agreement are reasonable and narrowly tailored to protect SkillStorm's legitimate business interests.

106.    The restraints imposed by the confidentiality and non-disclosure provisions of the Transition Agreement align with applicable public policy.

107.    Anabtawi, in obtaining, using and disclosing SkillStorm's Confidential Information (as defined in the Transition Agreement), to Smoothstack, a competitor of SkillStorm, has breached the Transition Agreement.

108.    As a proximate result of Anabtawi's breach as described above, SkillStorm has suffered and will continue to suffer damages that cannot be reasonably determined at present.

109.    SkillStorm will be irreparably harmed if Anabtawi is permitted to continue using or disclosing SkillStorm's Confidential Information.

110. SkillStorm has no adequate remedy at law and is, therefore, entitled to an injunction enjoining Anabtawi from further use or disclosure of SkillStorm's confidential information.

111. SkillStorm has a substantial likelihood of success on the merits of its claims against Anabtawi.

112. The threatened injury to SkillStorm outweighs any possible harm to Anabtawi.

113. In granting injunctive relief, this Court will not disserve the public interest.

## COUNT V

### (Breach of Fiduciary Duty – Anabtawi)

114. SkillStorm hereby realleges paragraphs 1-46 as if fully set forth here.

115. As an employee and executive of SkillStorm, Anabtawi had access to SkillStorm's Confidential Information and/or trade secrets, including, without limitation, SkillStorm's pricing, minimum order size, terms for conversion from contract consultant to client full-time employee, market segmentation, SkillStorm value drivers to clients in all market segments, buyer personas in all market segments, SkillStorm differentiators, sales language for

55330599 v1

each market segmentation, potential deals in SkillStorm's sales pipeline, and the technology platforms SkillStorm was targeting in its sales strategy.

116.    Anabtawi was in a position of trust and confidence with respect to SkillStorm which gave rise to a corresponding duty to act with the utmost good faith, loyalty and honesty in his dealings with respect to SkillStorm.

117.    Anabtawi breached this fiduciary duty to Plaintiff by disclosing and misappropriating Plaintiff's proprietary, confidential and/or trade secret information. This includes, without limitation, SkillStorm's pricing, minimum order size, terms for conversion from contract consultant to client full-time employee, market segmentation, SkillStorm value drivers to clients in all market segments, buyer personas in all market segments, SkillStorm differentiators, sales language for each market segmentation, potential deals in SkillStorm's sales pipeline, and the technology platforms SkillStorm was targeting in its sales strategy, with the intent to use them for his own benefit or for the benefit of Smoothstack a direct competitor of SkillStorm.

118.    As a proximate result of Anabtawi's breach of his fiduciary duties, SkillStorm has suffered damages.

55330599 v1

## COUNT VI

### (Aiding and Abetting Breach of Fiduciary Duty – Smoothstack)

119.    SkillStorm hereby realleges paragraphs 1-46 as if fully set forth here.

120.    As an employee and executive of SkillStorm, Anabtawi had access to SkillStorm's proprietary, confidential and/or trade secret information, including, without limitation, SkillStorm's pricing, minimum order size, terms for conversion from contract consultant to client full-time employee, market segmentation, SkillStorm value drivers to clients in all market segments, buyer personas in all market segments, SkillStorm differentiators, sales language for each market segmentation, potential deals in SkillStorm's sales pipeline, and the technology platforms SkillStorm was targeting in its sales strategy.

121.    Anabtawi was in a position of trust and confidence with respect to SkillStorm which gave rise to a corresponding duty to act with the utmost good faith, loyalty and honesty in his dealings with respect to SkillStorm.

122.    Anabtawi breached this fiduciary duty to Plaintiff by disclosing and misappropriating Plaintiff's proprietary, confidential and/or trade secret information. This includes, without limitation, SkillStorm's pricing, minimum order size, terms for conversion from contract consultant to client full-time employee, market segmentation, SkillStorm value drivers to clients in all

29

market segments, buyer personas in all market segments, SkillStorm differentiators, sales language for each market segmentation, potential deals in SkillStorm's sales pipeline, and the technology platforms SkillStorm was targeting in its sales strategy, with the intent to use them for his own benefit or for the benefit of Smoothstack a direct competitor of SkillStorm.

123.    Smoothstack knew of Anabtawi's breaches of his fiduciary duty to SkillStorm.

124.    Smoothstack offered substantial assistance or encouragement of Anabtawi's breaches of his fiduciary duty to SkillStorm, including soliciting and encouraging Anabtawi to provide the Confidential Information he provided and which Smoothstack recorded during the February 2024 interview, and which Smoothstack subsequently disclosed to and used with its employees.

125.    As a proximate result of Smoothstack's actions in aiding and abetting a breach of Anabtawi's fiduciary duties, SkillStorm has suffered damages.

## <u>COUNT VII</u>

### (Tortious Interference with a Contractual Relationship - Smoothstack)

126.    SkillStorm hereby realleges paragraphs 1-46 as if fully set forth here.

127.   In or about February 2024, SkillStorm had an existing contract with Anabtawi—the Confidentiality Agreement—which imposed non-disclosure obligations on Anabtawi with respect to SkillStorm's Confidential Information and trade secrets.

128.   Smoothstack knew or should have known of such existing contractual relationship between SkillStorm and Anabtawi.

129.   Defendants intentionally and unjustifiably interfered with the contractual relationship between SkillStorm and Anabtawi by encouraging and inducing Anabtawi to breach that contractual relationship with SkillStorm as detailed above.

130.   SkillStorm has been damaged as a proximate result of Smoothstack's interference with SkillStorm's contractual relationship with Anabtawi.

## <u>COUNT VIII</u>

### (Conspiracy – Smoothstack and Anabtawi)

131.   SkillStorm hereby realleges paragraphs 1-38 as if fully set forth here.

132.   Defendants acted in concert to do an unlawful act or to do a lawful act by unlawful means.

31

133.    Defendants acted in concert to deprive SkillStorm of the benefit of the bargain for its investment in its, Sales Trade Secrets and other Confidential Information by usurping them to the detriment of Smoothstack.

134.    Defendants have performed overt acts in furtherance of the conspiracy, including, without limitation, videoing the transmission of the Confidential Informational and trade secrets, and allowing, promoting or requiring sales employees of Smoothstack to watch the Video and use the information from the Video in connection with their business strategies and activities on behalf of Smoothstack, and contacting clients and prospective clients of SkillStorm in an effort to solicit them, and use SkillStorm's pricing information in an effort to undercut them with certain of those clients or potential clients.

135.    SkillStorm has been damaged as a proximate result of the acts of Defendants in furtherance of the conspiracy.

## REQUEST FOR PERMANENT INJUNCTION

Based on the facts recited above and in this request, SkillStorm hereby requests a permanent injunction:

1.    Enjoining Defendants from further misappropriating, disclosing or using SkillStorm's Confidential Information and trade secrets;

55330599 v1

2.      Requiring Defendants to return to SkillStorm all of SkillStorm's Confidential Information and trade secrets in their possession, custody, or control, including, but not limited to, the Video and any work product derived from the Video or otherwise from the interview with Anabtawi; and

3.      Enjoining Defendant Smoothstack from further unlawfully interfering with SkillStorm's contracts and other prospective business relations.

## **PRAYER FOR RELIEF**

WHEREFORE, based on the above, Plaintiff SkillStorm respectfully requests judgment for SkillStorm and against Defendants Smoothstack and Anabtawi for actual and exemplary damages (reserving the right to seek punitive damages upon proper predicate showing where appropriate) in an amount to be proven at trial and in accordance with law; prejudgment interest; post-judgment interest to the fullest extent permitted by law; all costs and expenses associated with this action, including attorney's fees; all equitable and injunctive relief requested by SkillStorm and available by law; and any such other relief this Court may deem just or proper.

55330599 v1

## <u>JURY DEMAND</u>

SkillStorm demands a trial by jury on all matters so triable.


Dated this 24th day of September, 2024.

Respectfully submitted,
**BURR & FORMAN LLP**
By:_____ */s/ Adam R. Smart*
**ADRIAN RUST**
Florida Bar No.: 080888
**ADAM R. SMART**
Florida Bar No.: 1032572
Burr & Forman, LLP
50 North Laura Street, Suite 3000
Jacksonville, Florida 32202
(904) 232-7200 (Tel.)
(904) 232-7201 (Fax)
ARust@burr.com
ASmart@burr.com
TThompson@burr.com
JMLewis@burr.com

***Attorneys for SkillStorm
Commercial Services, LLC***

55330599 v1